F. M. HUBBELL SON & COMPANY, Appellant, v. W. M. HAM-
MILL, County Treasurer, et al., Appellees.

MUNICIPAL CORPORATIONS: Non-Installment Assessments Pay-
able Forthwith.  An assessment for special improvement ben-
efits as to which no proceedings have been had for payment in
installments, as provided in Sec. 825, Code Supp., 1913, is pay-
able to the city at any time before the same has been certified
to the county treasurer for collection; and the city may not,
by custom or otherwise, merge such assessment into bonds or
assessment certificates, and thereby defeat the right to so pay.

*Appeal from Polk District Court.*—THOS. A. GUTHRIE,
Judge.

DECEMBER 13, 1919.

ACTION to cancel certain assessments made for street
improvements.  Opinion states the facts.  Decree for the
defendant, dismissing plaintiff's petition.  Plaintiff ap-
peals.—*Reversed.*

*Parrish & Cohen,* for appellant.

*George F. Henry* and *H. W. Byers,* for appellees.

GAYNOR, J.—The record discloses that plaintiff was the
owner of certain lots in the city of Des Moines, abutting
on what is known as West Fifth Street, between Grand
Avenue and Chestnut Street.  These lots were assessed by
the city for benefits assumed to have accrued by reason
of certain improvements made upon said street, for which
the lots, under the statute, became subject to assessment.

It is conceded that the schedule of assessment for the
opening, widening, and extending of Fifth Street was ap-
proved by the city council on the 29th day of December,
1916, and that plaintiff's assessment amounted to $16,895.75.
Thirty days from the date of the assessment were given

all lot owners whose property abutted on the improvement and was included in said schedule of assessment, to appear and file written objections or waivers, and thereby secure the right to pay in seven annual installments the assessment so levied, as provided in Section 825 of the Code Supplement of 1913. We may assume that certain parties did appear, and take advantage of this provision of the statute. Plaintiff, however, did not appear within 30 days, and did not avail himself of the right to have the payment postponed; but, on the 15th and 18th days of May, appeared before the city clerk and city treasurer, and tendered to them the full amount of his assessment, with interest. The city, through its said officers, refused to accept payment, basing refusal on the ground that bonds had been issued; that the books were closed, so far as the city was concerned; that payments could not be accepted by the city; and upon the further ground that it was customary to accept payments during the *30-day period* in which the owners of property had a right to appear and sign a waiver, but not afterwards.

By stipulation in the record, it appears that the city clerk did not certify the assessment to the county auditor until the 24th day of November, 1917, and that the same **was not spread** upon the tax books and delivered by the county auditor to the county treasurer before that date. The plaintiff appeared before the county treasurer, however, and had him figure the amount of the assessment and accrued interest to May 18, 1917, the date the tender was made to the city clerk and city treasurer. This was, we take it, before the tax had been certified to the county treasurer for collection. The plaintiff then tendered to the county treasurer the full amount of the assessment, with interest figured to May 18, 1917, the date of the tender to the city. The county treasurer refused to accept the same, stating, however, that the tender would be regarded by him as

a tender of the assessment, with interest accrued to May 18, 1917. It does not appear, specifically, on what grounds the treasurer refused to accept the payment. We take it that the refusal was based on the fact that the tax had not been certified to the county treasurer for collection, as provided in the statute, at that time, and that he had no authority to receive it at that time, because of such fact.

The question presented is: Had the plaintiff a right to pay to the city the special assessment made by it against his property at any time before the tax was certified to the county treasurer for collection, and was it the duty of the city to receive and accept payment upon tender of the amount of the assessment, with interest to the date of the tender, at any time before it had certified the tax to the county treasurer for collection?

This question involves the proper construction of Section 825, Supplement to the Code, 1913, and Section 828 of the Code of 1897, which read as follows:

"Section 825. The special assessments made in said plat and schedule, as corrected and approved, shall be levied at one time, by ordinance or resolution, against the property abutting on such street improvement * * * and, when levied and certified, shall be payable at the office of the county treasurer. If the owner of any lot or parcel of land * * * the assessment against which is embraced in any bond or certificate provided for in Chapter 8 of this title, shall, within 30 days from the date of such assessment, promise and agree in writing, indorsed on such bond or certificate, or in a separate agreement, that, in consideration of having the right to pay his assessment in installments, he will not make any objection of illegality or irregularity as to the assessment or levy of such tax upon and against his property, and will pay said assessment with interest thereon at such rate, not exceeding six per cent per annum, as shall by ordinance or resolution of the

council be prescribed, such tax so levied against the lot or parcel of land * * * of such owner shall be payable in seven equal installments, the first of which, with interest on the whole assessment from date of acceptance of the work by the city council, shall mature and be payable on the date of such assessment, and the others, with interest on the whole amount unpaid, annually thereafter, at the same time and in the same manner as the March semiannual payment of ordinary taxes; but where no such promise and agreement in writing shall be made by the owner of any lot or parcel of land * * * within said time, then the whole of said special assessment so levied upon and against the property of such owner shall *mature at one time,* and be due and payable, with interest from the *date of acceptance of* the work by the city council, on the date of such assessment, and shall be collected at the next succeeding March semiannual payment of ordinary taxes. All such taxes with interest shall become delinquent on the first day of March next after their maturity, and shall bear the same interest, with the same penalties, as ordinary taxes."

"Section 828. The owner of any property against which a street improvement or sewer assessment has been levied shall have the right to pay the same, or the unpaid installments thereof, with all interest, as the case may be, up to the time of said payment, with any penalties and the cost of any proceedings for the sale of the property for such special assessment or installments."

It will be noted that Section 825, supra, provides that the whole of the special assessment shall mature *at one time,* and be due and payable on the date of such assessment, with interest from the date of acceptance of the work by the city council. This provision of the statute applies to all the assessments. An extension of time for payment is given only to parties who appear before the council within 30 days from the date of the assessment, and file waiver

as provided in the statute.   This extension is granted upon a promise and agreement in writing that they will not make any objections to the legality or regularity of the assessment or the levy, and will pay said assessment with interest at such rate, not exceeding 6 per cent, as shall be prescribed by the council.   Thereafter, the assessment on the property of owners so agreeing shall be payable in 7 equal installments.

Now, it is apparent that, if the tax levied matures on the date of its assessment, and is due and payable at that time, the taxpayer so charged has imposed upon him the duty to pay at that time, and if the duty rests upon him to pay, there is someone to whom payment can be made. The city has caused the tax to be levied for the purpose of creating a fund to meet the obligations which it assumes in street improvement.   Section 828 provides that the owner of any property against which a street improvement assessment has been levied, shall have the right to pay the same, or the unpaid installments thereof, with all interest, as the case may be, up to the time of said payment.   It is not payable at the office of the county treasurer, until it has been certified and reaches the county treasurer for collection.   The county treasurer has no authority to collect, until the city has certified the tax to him for that purpose.   Up to that time, it remains under the control and jurisdiction of the city, and the city has a right, and it is its duty, to receive payment from all lot owners against whom it has made the assessment.

It will be noted that the tax, when assessed, becomes a lien upon the lot.   It will be noted that it bears interest from the time the work is accepted by the city.   It will be noted that it matures at once.   It will be noted that the property owner has a right to pay the same at once, without any limitation on that right.   If he fails to pay it, he is charged with interest.   The assessment remains a lien

upon his land.  He may be subject to penalties and costs. The duty to pay involves the right to pay.  Payment must be made to someone, in order to discharge the lien and avoid the obligation to pay interest.  Up to the time it is certified to the county treasurer, there is no one involved in the transaction or interested in the transaction to whom payment can be made, except the city itself.  The city has no authority to issue bonds which will extend the payment beyond the obligations and rights of the taxpayer.  That provision of the statute which says (Section 841, Code, 1897), "such certificate [when issued] shall transfer to the bearer * * * all the right and interest of the city in every such assessment or part thereof described therein, and shall authorize such bearer * * * to collect and receive every assessment embraced in such certificate," refers to certificates issued for assessments wherein the taxpayer has consented to deferred payments.  The city cannot, by issuing certificates, take from the taxpayer the right which the statute gives him to discharge the lien of the tax from his land, and stop the running of interest by discharging the obligation at once.  The city cannot, by mere custom, change the rights of the taxpayer, nor can it, by delaying certification of the tax to the county treasurer, defeat the taxpayer of his right to pay, and discharge his property from the lien, at any time that he may elect to do so.  It is only payable at the county treasurer's office after it has been certified to the treasurer by the city clerk.  The treasurer then becomes a collector of the assessment for the city; and, when collected, it is payable to the city, or to the persons designated by the city to receive it, to wit, the certificate holders.  The city is without authority to issue certificates which affect the right of the taxpayer to pay his assessment, due at the time the assessment is made, at any time thereafter.  The authority for issuing certificates, found in Section 841 of the Code of 1897, does not

have that effect. The form of the certificate is prescribed in Code Section 843; and these sections, in so far as the extension of time for payment is concerned, relate to these certificates issued against property assessed, concerning which the owner has availed himself of the right to have payment postponed, as provided in Section 825. Of course, certificates may be issued against assessments unpaid at the time; but the city, by issuing the certificates, cannot extend the time of payment of the assessment beyond the time fixed by the statute. Certificates issued against assessments, as to which no waiver is filed, are payable by the city or by the county, immediately upon the payment to the city or county by the taxpayer of the amount due on the assessment represented by the certificate.

In the case at bar, the plaintiff tendered the full amount of his assessment to the city on the 18th day of May. It was the duty of the city to receive it. No question is made as to the sufficiency of the tender. If it had been accepted by the city, as it should have been, plaintiff's obligation under the assessment would be discharged, and his property would be released from the burden of the lien. Its refusal to accept payment does not change the situation, and plaintiff is entitled to have the right acquired by the tender enforced now against the city. The judgment of the district court is, therefore, reversed, and decree ordered in harmony with this opinion. The plaintiff may have a decree entered in the district court, or have a decree entered here, at its election.—*Reversed.*

·LADD, C. J., WEAVER and STEVENS, JJ., concur.